Good morning, your honors. May it please the court, my name is David Hagigi. I am counsel for petitioners Mr. Theodore and Mrs. Lindawati, the two immigration cases on this morning's docket. Our contention is that the board abused its discretion in denying the motions to reopen in both of the cases that are before the court today. We're going to hear the cases separately since the government counsel isn't the same, so we're going to just talk about Lindawati first and then we'll talk about Theodore separately. I recognize the overlap, but given that the orders on the other side are different, we have to hear the arguments separately. Understood, your honor. Thank you. Well, in Malti v. Ashcroft and in Salim v. Holder, this court has consistently held that continuing violence can constitute change conditions even where the same type of violence has occurred before. So the question under Malti and Salim is what evidence is needed to show change conditions to permit a motion to reopen? Well, in 2016, the Salim court decided that the exact same type of evidence is presented here is sufficient. Another thing in Salim was that there also was evidence of personalized risk in terms of the sister's letter, which made the evidence a little bit more personalized. What do you have that makes a comparable showing of Salim on personalized risk? Well, your honor, we have Ms. Lindawati's preserved testimony that it's not she's not just claiming that she's a member of the two disfavored groups under Sael as being ethnically Chinese and under Tambulbon of being Christian, but rather all of the harm that occurred to her individually. Now, in Sael, it was recognized that even if threats or instances of harm that alone or in the cumulative would not be considered past persecution, they can nevertheless be used to draw the inference for a well-founded future fear of persecution to show the it was a sliding scale, if you will, to show that a person has met the individualized risk. When you take a look at the testimony, what it Ms. Lindawati testified to that she's a she's a devout Christian. She's a school teacher, a Sunday school teacher that while living in Indonesia, that she was being extorted by an Indonesian police officer for four years who would be coming to her store, taking protection money from her that when she stopped paying that police officer, she she was accosted in her store with a man wielding a knife. She said she was cut on one occasion. On another occasion, she said that she was scratched. The judge in his oral decision took the lesser view, said that it was scratched. But nonetheless, she has had individualized risk that when we look at the background of today, we'll see that because the the individualized risk that establishes changed circumstances. Right. Well, the changed circumstances are the country conditions report. So for Ms. There wasn't just a showing of changed country conditions justifying the motion re-opening. It was additional evidence of personalized risk that justified the motion re-opening. You have something similar here. Right. So, again, Your Honor, I think the point that I'm trying to make is that as a devout Christian, as someone who's attending church, she would be afraid to practice her religion back home in Indonesia. So that is her personalized risk. And the things that have happened to her in the past were both on account of protected grounds of race and religion. Now, Your Honor, the evidence here, we believe, is even more compelling than what was presented in Selim, namely because of the rise in ISIS in Indonesia and the use of the blasphemy laws by the Indonesian government. Our documentary evidence shows that since the petitioners last hearing before the immigration judge, there have been increased violence, intensified attacks against Christians and other religious minorities, decrease in government protection, upsurge in attacks and government participation in persecution. In fact, let me go back to Ms. Linda Wati. If I'm not mistaken, the letters that she had from her family members back home, they are presenting the fear that they have living in Indonesia. And they are telling her about... They didn't recount any sort of specific threats to those persons, which I felt was, maybe I'm wrong, but I felt the sister's letter in Selim did do that. Right. Now, here's also what I would point out. In the three cases that we have since found out about in Liem, which was the Third Circuit case, it matches directly on the same time span as Ms. Linda Wati. In Liem, that Third Circuit case, the matter was before the immigration judge, just like Ms. Linda Wati in 2003. And the motion to reopen, just like Ms. Linda Wati. Well, actually, the motion to reopen was in early 2018. But in Ms. Linda Wati's case, she filed it in December of 17. So it was just a few months at best. In Tanu Santoso, the Second Circuit case, they found that changed circumstances had occurred that the merits were was in 2003. And the motion to reopen was in 2017. And in the Eleventh Circuit case for Ms. Linda Wati, Ms. Linda Wati's merits hearing was in 2007 before the IJ. And they filed the motion to reopen in May of 2018. So the timeline of all three of these cases from the sister circuits, if you will, match exactly to Ms. Linda Wati. And in... May I ask you a question, Mr. Peggy? Yes, you may. There's evidence in the record that the ISIS group has done acts, not just talk about, but acts which have caused persecution. Well, if you take a look at the International Religious Freedom Report, the very first page of it, it talks about ISIS inspired attacks on churches. It also and let me see if I have the site for you, Your Honor. I believe. You know what? I'll find the site and on rebuttal, I will come back and I will speak to that. I'd like to preserve the remainder of my time for rebuttal if that's possible. All right. Thank you, Counsel. I will hear now from Ms. Lesnau. May it please the Court, Jessica Lesnau on behalf of... Your video, we can hear you, but all of a sudden I could see you before, but all of a sudden now I cannot see you. There we go. All right. Thank you. May it please the Court, Your Honors, Jessica Lesnau on behalf of the Attorney General. The Court here should deny the petition for review because the agency clearly acted within its broad discretion in denying petitioners third motion to reopen presented 13 years after the board's final order of removal. Petitioners have not demonstrated that they should be excused from the time and number bars governing motions to reopen because they failed to present evidence that conditions for ethnic Chinese Christians have changed materially since their original hearing in 2003. Can I ask you about Saleem? Because it seems to me in Saleem they successfully argued that it had materially changed for Christians between 2006 and 2013. Why isn't that decision controlling here? It seems like for that time period the Ninth Circuit made a finding that it did change. You're correct, Your Honor. The Ninth Circuit did make that finding, but petitioners' attempt to analogize Saleem to this case is unpersuasive. Saleem is distinguishable, and there are several different factual aspects of that case that make it distinguishable. First, they actually remanded to consider a claim where the petitioner had converted from Christianity to Buddhism since the original proceeding, which is not the case here. Petitioners have always claimed to be ethnic Chinese Christians. Importantly, Saleem is different because Saleem presented evidence of individualized risk that's simply lacking from this motion to reopen, Your Honor. For example, I believe it was page 1140 of the decision in Saleem. The court detailed a letter from a family member in that case, as Your Honor's already pointed out, which detailed threats to the family's local church and their inability to practice their religion. And that's simply lacking from the supporting evidence of the motion to reopen in this case. There's a third aspect to Saleem beyond the individualized evidence and the fact that there was a conversion, and that is that, as Judge DePauw said, there was a statement in Saleem that the evidence of treatment of Christians had changed in Indonesia. It says on 1138, there is substantial evidence that these developments, after talking about all the increased mistreatment of Christians, occurred after 2006. The report states that Christians have increasingly been the target of Islamic extremist movements in the past two or three years. So that's the aspect of Saleem that seems applicable to this case. Well, Your Honor, I think that as with Saleem and this court's other subsequent cases looking at similar issues as to Saleem, we're really looking at the time period. So we're comparing that time period from their original removal hearing in 2003 with their motion to reopen filed in 2013. And while there is evidence in the record here of, for example, intolerance toward Christians by Muslims, also petitioners have submitted evidence, I would direct the court to page 110 of the record, stating that terrorist groups have long loomed in Indonesia, especially many extremist groups that came to the forefront in the late 90s and early 2000s. So right before the time of petitioners' original removal hearing. And these groups, their evidence states, laid the basis for the jihadist cells and extremist groups that they reference today. Also, I think it's important to note that much of the evidence submitted with the new motion to reopen applies to all minority religious groups, not just Christians in Indonesia. Your Honor, turning back to the individualized risk aspect of this case, the board, again, acted within its discretion in looking at this. And even as members of a disfavored group in Indonesia, which the board conceded and thus conducted that analysis, the petitioners did not demonstrate that sufficient individualized risk that they would face if returned to Indonesia. For example, statements in Linda Waddy's declaration, they speak about hearing about protests, the governor of Jakarta's conviction and imprisonment. But as the board noted, there was no indication that this was more than kind of an off incident. In fact, petitioners have submitted other evidence that stated that the conviction of the governor of Jakarta was always a special case. In some, Your Honor, petitioners have simply failed to demonstrate the prima facie case for relief, even considering their membership in the disfavored group of Chinese Christians because they just did not provide that objective level of evidence of an individualized risk of future persecution. And I would also like to reference the opposing counsel's claims, I'm sorry, sites to cases from the Third Circuit and also the Second Circuit submitted in the 28J letter that they filed, I believe it was two days ago. The court does not need to look to these out-of-circuit cases because the court's current precedent can squarely answer the question in this case. Specifically, we can look to the court's decision in, for example, Opioid recessions, where petitioners showed that their family had experienced threats and physical attacks. That seems to be the crux of the issue in these cases. Petitioners' families here did not detail in their letters that they experienced any individual attacks or other threats. Rather, this case seems to be more like another recent case that this court decided in Rajobeholder, where the families did not show generally worsening, I'm sorry, the evidence showed generally worsening persecution of Christians in Indonesia, but there was no evidence that the family had been targeted directly. Your Honors, in some, the board reasonably found that petitioners fell short of carrying their burden to demonstrate changed country conditions in Indonesia, and they likewise failed to present evidence demonstrating... Well, Your Honor, the standard of review here would be abuse of discretion, and so when the court is looking at the evidence as the board reviewed it, it's comparing the weight of, it's comparing the evidence from the, presented at the original removal hearing, and that with the evidence presented with the motion to reopen, and the fact of the matter. Whether it's been a material change. That's correct. What is the change in your view? board, which were subsequently denied on petition for review to this court, that the evidence was not qualitatively different. And in failing to make that qualitatively different showing, Your Honors, they've failed to show that changed, materially changed circumstances in Indonesia, and likewise failed to demonstrate the prima facie case for the relief. If the court has no further questions for the reasons discussed today, and also in the answering brief, the court should deny the petition for review. Thank you, Your Honors. Mr. Aikiki, you may proceed. Thank you, Your Honors. I respectfully disagree with counsel for the government. The Ahok case is very important here. Ahok, it should be noted that he became the governor of Jakarta through succession, not through vote. And it incensed the fundamentalists back home, and the government worked to appease them, and Ahok was convicted of blasphemy, and he actually served a two-year sentence. Solely for saying that the Quran does not prohibit Muslims for voting for a Christian person. Now, Ahok's case shows the upsurge of radicalism against Christians. Also, I want to point to the unpublished 11th Circuit decision, Krishnawati, where they state, contrary to the BIA's fighting, the evidence Krishnawati submitted in support of her motion demonstrated that incidents of religious intolerance and related violence against religious minorities, including Christians, had risen substantially during the period of 2014 through May of 2018, when the motion to reopen was filed, and that's at 805 Fed Apex 1015 at 1019. The government has not shown that the violence has been abated. Nothing in the record shows that the violence has been abated. In fact, it only shows that the violence is qualitatively different. It is becoming more increased. The government now has a hands-on in the persecution that's happening to these religious minorities, including Christians. Thank you, Counselor. Your time has expired. The case just argued will be submitted, and we'll now proceed to hear arguments in Theodore versus Bar No. 18-72412.
judges: Bea, Thapar, Collins